**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION**

**GERALD L. ALBIN,**

    **Plaintiff,**

**v.**                                      **CASE NO. 8:07-CV-569-T-EAJ**

**MICHAEL J. ASTRUE,
Commissioner of Social
Security Administration,**

    **Defendant.**
_____/

## FINAL ORDER

Plaintiff brings this action pursuant to the Social Security Act (the Act), as amended, Title 42, United States Code, Sections 405(g) and 1383(c)(3), to obtain judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying his claim for Supplemental Security Income ("SSI").

The undersigned has reviewed the record, including a transcript of the proceedings before the Administrative Law Judge ("ALJ"), the administrative record, and the pleadings and memoranda submitted by the parties in this case.[1]

In an action for judicial review, the reviewing court must affirm the decision of the Commissioner if it is supported by substantial evidence in the record as a whole and comports with applicable legal standards. See 42 U.S.C. § 405 (g). Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983). If there is substantial evidence to support the

---

[1] The parties have consented in this case to the exercise of jurisdiction by a United States Magistrate Judge (Dkt. 14).

Commissioner's findings, this court may not decide the facts anew or substitute its judgment as to the weight of the evidence for that of the Commissioner. See Goodley v. Harris, 608 F.2d 234, 236 (5th Cir. 1979). If the Commissioner committed an error of law, the case must be remanded to the Commissioner for application of the correct legal standard. See Davis v. Shalala, 985 F.2d 528, 534 (11th Cir. 1993). If the reviewing court is unable to determine from the Commissioner's decision that the proper legal standards were applied, then remand to the Commissioner for clarification is required. See Jamison v. Bowen, 814 F.2d 585, 588 (11th Cir. 1987).

## I. Background

Plaintiff filed an application for SSI on May 17, 2004, alleging disability beginning March 1, 1966. Plaintiff's claim was denied initially and upon reconsideration. Plaintiff subsequently amended his onset date of disability to May 17, 2004. Following an administrative hearing, the ALJ denied Plaintiff's claim in a decision dated July 28, 2006. On February 3, 2007, the Appeals Council declined to review the ALJ's decision, making the ALJ's decision the final decision of the Commissioner.

At the time of the April 3, 2006 hearing, Plaintiff was forty years old.[2] Plaintiff has a high school education and past relevant work experience as a commercial fisherman and a cook.

The ALJ found that Plaintiff had not engaged in substantial gainful activity since May 17, 2004 and that Plaintiff had the following severe impairments: hepatitis C/cirrhosis, Gastroesophagel reflux disease ("Gerd"), low back pain, bipolar/depression/anxiety and panic disorder. (T 21) However, the ALJ held that Plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment under 20 CFR Part 404, Subpart P App. I. (Id.) The

---

[2] The ALJ incorrectly held that Plaintiff was thirty-seven years old at the time of the administrative hearing. (T 22) Any error in stating claimant's age is harmless error.

ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform medium work, with limitations in avoiding fumes, odors, gases, poor ventilation, hazardous machinery, and unprotected heights. (T 22) The ALJ concluded that Plaintiff is able to perform his past relevant work. (T 26) Thus, the ALJ determined that Plaintiff was not disabled as defined in the Act. (Id.)

The medical evidence has been summarized in the decision of the ALJ and will not be repeated here except as necessary to address the issues presented.

**II. Discussion**

Plaintiff alleges the Commissioner erred by: (1) failing to give proper weight to the treating physicians' opinions, (2) finding Plaintiff's alcohol abuse was the reason for Plaintiff's impairments, (3) failing to consider the combined effect of all of Plaintiff's impairments, (4) failing to consider Plaintiff's non-exertional impairments in determining Plaintiff's RFC, and (5) finding that Plaintiff's testimony was not entirely credible (Dkt. 25).

**A.** Plaintiff claims that the ALJ improperly weighed the opinions of Plaintiff's treating physicians and misinterpreted the opinions of the consulting physicians (Dkt. 25 at 10-13).

Evidence from a claimant's treating physician is entitled to considerable weight unless there is good cause to reject it. Wiggins v. Schweiker, 679 F.2d 1387, 1389 (11th Cir.1982). The ALJ may discount a treating physician's opinion if it is not well-supported by medical evidence or is inconsistent with the record as a whole. Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1159-60 (11th Cir. 2004). The ALJ must articulate the reasons for giving less weight to the opinion of a treating physician, and failure to do so is grounds for reversal. Lewis v. Callahan, 125 F.3d 1436, 1140 (11th Cir. 1997). An ALJ may not substitute his own opinions for that of medical professionals. Freeman v. Schweiker, 681 F.2d 727, 731 (11th Cir. 1982). The opinions of non-

3

examining reviewing physicians standing alone do not constitute substantial evidence. <u>Sharfarz v. Bowen</u>, 825 F.2d 278, 280 (11th Cir. 1987).

    1. <u>Plaintiff's Treating Physicians</u>

<u>Dr. Merritt</u>

Plaintiff received treatment from L. S. Merritt, M.D. ("Dr. Merritt") from December 20, 1991 through April 19, 2004. (T 141-48). In 1995 and 1996, Dr. Merritt prescribed Xanax for Plaintiff's complaints of anxiety attacks, occasional panic attacks, and stress with legal problems. (T 147) In December 2001, Dr. Merritt prescribed Nexium in 2002 and 2003 to treat Plaintiff's complaints of Gerd. (T 144) In November 2002, Plaintiff received a prescription for Zoloft for anger management and was advised to discontinue alcohol consumption. (T 144)

On May 30, 2003, Plaintiff tested positive for hepatitis C. (T 143) Plaintiff advised Dr. Merritt that he "tires easily" and complained of tenderness in his lower back. (<u>Id.</u>) Dr. Merritt ordered laboratory blood work to measure viral load. (<u>Id</u>.) In February 2004, Plaintiff had swollen lymph nodes and required blood work to measure viral load for hepatitis C. (T 141)

On April 5, 2004, Dr. Merritt prescribed Wellbutrin to treat Plaintiff's anxiety, depression, and sleeplessness due to the stress of Plaintiff's discontinued alcohol use. (T 141) During a follow-up visit on April 19, 2004, Plaintiff complained of nervousness, insomnia, depression, and an adverse reaction to Wellbutrin. (<u>Id.</u>) From April 2004 through June 2005, Plaintiff received prescriptions for Xanax to treat Plaintiff's anxiety. (T 141, 262-63)

In January 2005, Dr. Merritt indicated that Plaintiff was scheduled for Interferon treatment and complained of lower back soreness and lumbar pain. (T 264)

On April 19, 2004, Dr. Merritt completed a Medical Verification form and diagnosed

4

Plaintiff with hepatitis C and depression. (T 265) Dr. Merritt concluded that Plaintiff was unable to work because Plaintiff "fatigues very rapidly" and the expected duration of the limitations on his activities was permanent. (Id.) To treat Plaintiff's symptoms of hepatitis C, Dr. Merritt recommended Interferon treatments. (Id.)

Dr. Corzo

From February 27, 2004 to March 1, 2004, Plaintiff was treated by Hector Corzo, M.D. ("Dr. Corzo"), a psychiarist at the Personal Enrichment Mental Health Services, on a voluntary basis for anger issues, lack of sleep, and alcohol abuse. (T 130) Plaintiff stated that he was positive for hepatitis C. (Id.) Dr. Corzo's notes also indicate Plaintiff was drinking upwards of one gallon of vodka a day and occasionally using marijuana and cocaine. (Id.) Dr. Corzo diagnosed Plaintiff with alcohol induced affected disorder, alcohol abuse, and hepatitis C. (T 131) Plaintiff's Global Assessment of Functioning score was 35. (Id.) Plaintiff responded well to detoxification. (T 129) At the time of his discharge, Plaintiff's GAF score had risen to 50. (Id.)

Dr. Shah

Plaintiff was treated by Mehul Shah, M.D. ("Dr. Shah") from November 2003 to June 2005. (T 164-74, 261-62) From May 2004 to October 2004, Dr. Shah's records reflect that Plaintiff was treated for hepatitis C symptoms, anxiety, panic attacks, tiredness, and Gerd. (T 165-69). Dr. Shah referred Plaintiff to a GI clinic and psychiatrist. (T 168) On July 5, 2004, Plaintiff received a prescription to ease his anxiety concerning future air travel. (T 167) In June 2005, Plaintiff was treated by Dr. Shah for insomnia and flu-like symptoms. (T 261)

Plaintiff denied the use of alcohol on May 7, 2004, October 13, 2004, and March 31, 2005, but admitted to consuming alcohol in November 2003, on May 25, 2004, and in July 2004. (T 165-

5

70)

### Dr. Visvalingam

In November 2004, Plaintiff was diagnosed with Gerd and intermittent dysphagia by Vernu Visvalingam, M.D. ("Dr. Visvalingam"). (T 175-77) Dr. Visvalingam performed an EDG with biopsy on Plaintiff and was diagnosed Plaintiff with LA grade B esophagitis, possible short-segment Barrett's, and gastritis. (T 177-78) Although Plaintiff's esophagus, stomach, and duodenum were normal in appearance, Plaintiff had an obvious erosive esophagitis with linear erythema at the GE junction and the GE junction was highly irregular. (Id.)

### Dr. Kamath

In October 2004, Plaintiff was referred to Jay K. Kamath, M.D. ("Dr. Kamath") for evaluation of his chronic hepatitis C virus.[3] (T 248) Plaintiff denied IV drug use but indicated he shared needles when injecting steriods while working out at a gym. (Id.) Plaintiff admitted that he was drinking two to three beers on weekends. (T 249) Plaintiff advised Dr. Kamath of his treatment at Suncoast Mental Health for mixed bipolar disorder. (T 248) In January 2005, the results of Plaintiff's liver biopsy confirmed a diagnosis of chronic hepatitis C. (T 252)

In May 2005, Plaintiff begin Interferon treatments for hepatitis C virus and admitted to consuming alcohol. (T 256) Dr. Kamath warned Plaintiff that his failure to abstain from alcohol would result in the discontinuance of his treatments and referral to another facility. (Id.)

### Medical Records from Suncoast Center of Community Mental Health

Plaintiff received mental health treatment from the Suncoast Center of Community Mental Health from March 2004 to November 2005. (T 181-216, 267-81) On May 12, 2004, Plaintiff was

---

[3] The ALJ states that Plaintiff received Interferon treatments from Dr. Grabowski. (T 24) However, Chester Grabowski is a nurse practitioner in Dr. Kamath's office. (T 248)

diagnosed with bipolar disorder, polysubstance dependence, and hepatitis C. (T 201) Plaintiff was depressed, hyper, moody, and impatient; he had racing thoughts and trouble sleeping. (Id.) Plaintiff stated that the last time he used alcohol was in April 2004. (Id.) Plaintiff started taking Zyprexa in May 2004 to treat his depression. (T 198)

In July 2004, Plaintiff denied the use of alcohol, any side effects from Zyprexa, and stated he was sleeping well. (T 191) In fact, Plaintiff reported that the medication was "working great for my moods," with no symptoms of thoughts racing, mania, or depression. (Id.) In August 2004, Plaintiff's experienced a loss of sleep when taking Zyprexa but reported that Zyprexa was working well to keep his mood stable, with no symptoms of mania, irritability, suicidal thoughts, or anxiety attacks. (T 189) Plaintiff denied any use of alcohol since February 2004. (Id.) To control his weight, Plaintiff was swimming laps for about 30 minutes on a daily basis. (Id.)

In November 2004, Plaintiff stopped taking all medications and experienced erratic sleep, continued insomnia, continued irritability, and panic attacks. (T 183) Plaintiff was prescribed Abilify to stabilize his moods and Xanax to treat his panic attacks. (Id.) Plaintiff continued his daily swims to stay in shape and to maintain his weight.

In December 2004, Plaintiff complained that the Abilify made him tired, moody, and edgy. (T 181). To treat his panic attacks, he received a prescription for Xanax. (Id.) Plaintiff was swimming laps every other day. (Id.) Plaintiff denied any use of alcohol in November and December 2004. (T 181-83)

From January 2005 to November 2005, Plaintiff continued to take Zyprexa, denying any side effects other than drowsiness. (T 268-81). While taking Zyprexa, Plaintiff's mood was level and he slept well. (T 274-81) Plaintiff was swimming and exercising on a daily basis. (T 281) In April

7

2005, Plaintiff was anxious about financial problems and mildly agitated but did not demonstrate any paranoia, delusions, or mania. (T 277) In May 2005, Plaintiff was considered "quite stable" on his current medications; his GAF score was 60. (T 276)

In July 2005, treatment records indicate that Plaintiff was anxious, distressed, and depressed. (T 274-75) Plaintiff reported side effects of blurred vision, loss of appetite, depression, chills, diarrhea, tearfulness, and poor sleep since starting his Interferon treatments. (Id.) Plaintiff also stated that he had a beer while on the Interferon treatment and it made him violently ill. (T 275)

In August 2005, Plaintiff continued to experience side effects from the Interferon treatments, including loss of appetite, tiredness, dizziness, and weakness. (T 273) Plaintiff reported that his insomnia symptoms had subsided and he was sleeping better due to prescribed medication. (T 272) In August 2005, Plaintiff denied using any alcohol for six months. (Id.) The clinic's records reflect that Plaintiff consumed alcohol in February 2004, April 2004, February 2005, and July 2005. (T 189, 196, 275)

    2. Consulting Physicians

On July 29, 2004, Arthur H. Hamlin, Psy.D. ("Dr. Hamlin") completed a psychiatric review technique form and noted Plaintiff's allegations of depression and panic attacks. (T 149-62). Dr. Hamlin was unable to make a determination on Plaintiff's mental limitations due to the lack of any treatment records for Plaintiff. (Id.)

J. Patrick Peterson, Ph.D. ("Dr. Peterson") completed a mental residual functional assessment of Plaintiff on February 16, 2005. (T 221-24) Dr. Peterson diagnosed Plaintiff with affective disorders, personality disorders, and substance addiction disorders. (T 221) Plaintiff had no significant limitations in understanding and memory, social interactions, and adaptions, with

8

moderate limitations in ability to maintain attention for extended periods and to complete a normal workday and workweek without interruptions. (T 221-22, 235)

Pursuant to a physical residual functional assessment dated April 19, 2005, Robert L. Steele, M.D. ("Dr. Steele") diagnosed Plaintiff with asymptomatic hepatitis C. (T 239) In reference to exertional limitations, Dr. Steele determined that Plaintiff could occasionally lift 50 pounds, frequently lift or carry 25 pounds, sit, stand and/or walk about 6 hours in an 8 hour day. (T 240) Dr. Steele noted that Plaintiff should avoid exposure to fumes, odors, dusts, gases, and poor ventilation. (T 243)

In February 2005, Linda Appenfeldt, Ph. D., ("Dr. Appenfeldt") conducted a psychological examination of Plaintiff. (T 217-20) Dr. Appenfeldt concluded that Plaintiff was alert, cooperative, with normal amplitude and quality of speech. (T 217) Dr. Appenfeldt also observed that Plaintiff's attention, concentration, memory, and judgment were adequate. (T 218) Plaintiff exhibited no evidence of obsessions, compulsions, phobias, guilt, overt delusional material, thought disorder, anxiety, circumstantiality, tangentiality, or distrubances of association. (Id.)

In reference to Plaintiff's substance abuse, Dr. Appenfeldt noted inconsistencies between Plaintiff's statements during the examination and his medical records. (Id.) Although Plaintiff stated he had not used marijuana for two years, a February 27, 2004 report from Dr. Corzo referred to Plaintiff's occasional use of marijuana and cocaine. Plaintiff also advised Dr. Appenfeldt that he had been drinking alcohol daily up until August 2004. (Id.) In discussing his mental and emotional symptoms, Plaintiff commented that he had "highs and lows" and was receiving mental health treatment at Suncoast Center for Community Mental Health. (T 219) Plaintiff informed Dr. Appenfeldt that he had "some depression" and had been diagnosed with bipolar disorder. (Id.)

9

Based on her examination and Dr. Corzo's report, Dr. Appenfeldt diagnosed Plaintiff with alcohol abuse and alcohol induced affective disorder. (T 220) To corroborate Plaintiff's treatment at Suncoast Center for Community Mental Health, Dr. Appenfeldt recommended obtaining these medical records. (Id.) Dr. Appenfeldt did not diagnose bipolar disorder "as the diagnosis criteria was not fully met at the time of this evaluation." (Id.) Because Dr. Appenfeldt could not determine if Plaintiff's mood disorder was substance induced or primary, she diagnosed Plaintiff with Mood Disorder, NOS. (Id.)

3. Medical Expert

Dr. Kazar

At the hearing, David Kazar, M.D. ("Dr. Kazar") testified that he reviewed Plaintiff's history of depression, bipolar disorder, anxiety order, panic attacks, and substance addiction disorder. (T 99) Although Dr. Kazar found that Plaintiff meet the A criteria for bipolar or panic attacks, Plaintiff's symptoms did not meet the B criteria for these disorders. (T 100) Specifically, Dr. Kazar concluded that Plaintiff experienced moderate limitations in daily living and in social functioning but seldom experienced limitations in concentration, persistence, or pace. (T 100-01, 105) Dr. Kazar concluded that Plaintiff's testimony of marked limitations was not supported by his treatment records. (T 105-09)

4. Parties' Positions

Plaintiff argues that the ALJ failed to address and give proper weight to the treating physicians' opinions. Plaintiff also contends that the ALJ improperly relied on the opinions of the consulting physicians in determining that Plaintiff was not disabled.

Defendant contends that the mere fact that Plaintiff was diagnosed with various medical

conditions does not show the extent, if any, of Plaintiff's functional limitations. As to Dr. Merritt's opinion that Plaintiff was unable to work because of disabling fatigue, Defendant asserts that the issue of whether an individual is disabled is ultimately reserved to the Commissioner. Defendant argues that the ALJ properly discounted Dr. Merritt's opinion because the opinion was rendered prior to Plaintiff's Interferon treatment. As additional grounds to discount Dr. Merritt's opinion, Defendant alleges that the opinion was inconsistent with: (1) Plaintiff's December 2004 statement that he could lift 50 pounds and walk half a mile before he needed to stop, (2) treatment records reflecting Plaintiff's ability to swim laps on a regular basis, and (3) Plaintiff's denial of any side effects of Zyprexa other than drowsiness.

Here, the ALJ reviewed the records of Plaintiff's treating physicians. However, the ALJ did not expressly state what weight, if any, he assigned to the opinions of the treating physicians and why the opinions were discounted, if so. Because the ALJ did not indicate the weight assigned to the opinions of the treating physicians and did not explain the basis for discounting these opinions, this court cannot meaningfully review the ALJ's decision. To the extent that the Commissioner argues that there is ample evidence in the record to discount the treating physicians' opinions, this court will not re-weigh the evidence and engage in conjecture that invades the province of the ALJ. See Nyberg v. Comm'r of Soc. Sec., 179 F. App'x 589, 592 (11th Cir. 2006) (per curiam) (unpublished). Consequently, the case must be remanded to afford the ALJ an opportunity to weigh the evidence and to apply the proper standard to the treating physicians' opinions.

Furthermore, the ALJ may have substituted his own opinion for those of the treating physicians. By way of example, the ALJ stated that "Dr. Merritt did state that the claimant was disabled in a form dated April 2004, because the claimant is easily fatigued, but this is before the

claimant began treatment for his hepatitis." (T 25)  The symptoms of chronic hepatitis may include fatigue, nausea, loss of appetite, and sleep disturbances.  See  20 C.F.R. Part 404, Subpart P, Appendix 1, Listing 5.00 (D).  Moreover, the adverse side effects of Interferon treatment may include: anemia, fever, cough, fatigue, myalgia, arthralgia, nausea, loss of appetite, insomnia, behavioral side effects, and influenza-like symptoms. Id.  When Plaintiff tested positive for hepatitis C in May 2003, Plaintiff advised Dr. Merritt that he tired easily.  Similarly, in May 2004, Dr. Shah noted Plaintiff's complaints of tiredness related to his hepatitis C infection.  During Plaintiff's Interferon treatments in July and August of 2005, Plaintiff experienced a loss of appetite, depression, chills, diarrhea, tearfulness, poor sleep, tiredness, dizziness, and weakness.  Therefore, the ALJ's assumption that Plaintiff's Interferon treatments would alleviate Plaintiff's fatigue is questionable and is certainly not substantial evidence in light of the ALJ's failure to follow the law regarding treating physician opinions.

Likewise, the ALJ's findings that alcohol abuse caused Plaintiff's physical and mental impairments and that Plaintiff's impairments would "certainly improve" if Plaintiff abstained from alcohol are also problematic.  (T 25) The ALJ noted that in February 2004 Plaintiff was drinking about a gallon of vodka a day.  (Id.)  The ALJ suggested that in May 2004, Plaintiff minimized the problems cause by his substance abuse, and by December 2004, Plaintiff had stopped using alcohol.  (Id.)  Nonetheless, the record indicates that Plaintiff was consuming alcohol after December 2004.  Further, the record shows that during periods when Plaintiff denied using alcohol, Plaintiff complained of insomnia, flu-like symptoms, loss of sleep, Gerd, lower back pain, and panic attacks.  The ALJ's reliance on Dr. Appenfeldt's opinion is also misplaced.  Although Dr. Appenfeldt could not determine if Plaintiff's mood disorder was alcohol related or primary, Dr. Appenfeldt prefaced

her diagnosis by expressly recommending that the treatment records from Suncoast Center for Community Mental Health be obtained to corroborate Plaintiff's complaints of depression, mood disorder, and bipolar disorder.

As for the consulting non-examining physicians, Drs. Hamlin and Peterson, the ALJ stated that "greater weight is given to non-examining State agency psychologists, as their opinions are consistent with the medical evidence." (T 26) The ALJ erred by giving Dr. Hamlin's opinion greater weight than Plaintiff's treating physicians. Dr. Hamlin was unable to make a determination on Plaintiff's mental limitations due to the lack of treatment records.

Therefore, on remand, the ALJ must expressly state what weight, if any, he assigned to the opinions of the treating physicians. Furthermore, the ALJ must articulate the specific record evidence and specific basis for discounting the opinions of Plaintiff's treating sources.

**B.** Plaintiff submits that the ALJ failed to consider the combined effect of all of Plaintiff's impairments and symptoms, resulting in a deficient RFC determination (Dkt. 25 at 7-10).

The ALJ must consider each alleged impairment and "state the weight accorded [to] each item of impairment evidence and the reasons for his decisions on such evidence." Gibson v. Heckler, 779 F.2d 619, 623 (11th Cir. 1986). In addition, the ALJ must explain whether the impairments are severe singly and in combination. Id. The combined effect of impairments must be considered even if any of the impairments considered separately are not "severe." Hudson v. Heckler, 755 F.2d 781, 785-86 (11th Cir. 1985). The failure to comply with these requirements results in a remand. Gibson, 779 F.2d at 623.

The ALJ's written decision reflects that he considered all of the impairments raised by Plaintiff that are supported by medical evidence in the record. The ALJ found that Plaintiff does

13

not "have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." (T 21) This language has been held sufficient to discharge the Commissioner's obligation to consider impairments in combination. See Wheeler v. Heckler, 784 F.2d 1073, 1076 (11th Cir. 1986) (the ALJ's finding that a claimant is "not suffering from any impairment, *or a combination of impairments* of sufficient severity to prevent him from engaging in any substantial gainful activity" is sufficient to signify that combined effect of impairments was properly considered). Accordingly, Plaintiff's argument that the ALJ failed to consider his impairments in combination is without merit, based on the present record.

**C.** Plaintiff also claims the ALJ erred by failing to consider Plaintiff's non-exertional impairments in determining his RFC and by finding that Plaintiff's testimony was not entirely credible (Dkt. 25 at 4-7, 13-15).

If remand is required on some of the issues raised in the case, it may be unnecessary to review other objections to the ALJ's conclusion. See generally Jackson v. Bowen, 801 F.2d 1291, 1294 n.2 (11th Cir. 1991). Accordingly, it is unnecessary to address this argument as the ALJ's findings may change on remand.

**III. Conclusion**

As discussed above, the Commissioner's decision is remanded for additional fact-finding as is necessary to complete the sequential evaluation. In reaching this conclusion, however, this court expresses no views as to what the outcome of the proceedings should be. On remand, each side shall be afforded an opportunity to introduce additional evidence on the issues presented.

Accordingly and upon consideration, it is **ORDERED AND ADJUDGED** that:

(1) the decision of the Commissioner is **REVERSED** and this case is **REMANDED** for

further administrative proceedings consistent with the foregoing; and

(2) the Clerk of Court shall enter final judgment in favor of Plaintiff pursuant to 42 U.S.C. § 405(g) as this is a "sentence four remand" and close the file. Shalala v. Schaefer, 509 U.S. 292, 302-03 (1993); Newsome v. Shalala, 8 F.3d 775, 779-80 (11th Cir. 1993). The final judgment shall state that if Plaintiff ultimately prevails in this case upon remand to the Social Security Administration, any motion for attorneys' fees under 42 U.S.C. § 406(b) must be filed within fourteen (14) days of the Commissioner's final decision to award benefits. See Bergen v. Comm'r of Soc. Sec., 454 F.3d 1273, 1278 n. 2 (11th Cir. 2006).

**DONE AND ORDERED** in Tampa, Florida on this 23rd day of February, 2010.

_____
ELIZABETH A JENKINS
United States Magistrate Judge